ANTHONY MOREHEAD,

                Plaintiff,

v.                                            Case No. 20-cv-1190-pp

ANGELA THOMPSON, *et al.*,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A

      Anthony Morehead, an inmate at Redgranite Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983 along with a motion for leave to proceed without prepaying the filing fee. Before the court could issue its order screening the original complaint, the plaintiff filed an amended complaint.[1] Dkt. No. 7. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 7.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

---

[1] The plaintiff titled the pleading "Second Amended Complaint with Jury Demand," dkt. no. 7 at 1, but it appears to be his first amendment.

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 4, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $ 41.37. Dkt. No. 5. The court received that fee on August 26, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)).

To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

At the relevant time, the plaintiff was an inmate at Redgranite Correctional Institution. Dkt. No. 7 at ¶3. Defendant Angela Thompson was Health Service Unit (HSU) manager at Redgranite; Defendant Burnett was a nurse practitioner and Rob Rhodes was a physical therapist, both at Redgranite; and Defendant Nelson was a doctor at Waupun Memorial Hospital.

3

Id. at ¶¶ 4-7. The plaintiff says that John/Jane Doe "is the nursing staff" at Redgranite. Id. at ¶8.

On June 4, 2018, the plaintiff was playing basketball when he felt "an immense strain on his ankle and heard a loud popping sound coming from the ankle. Id. at ¶10. He describes the pain as extreme, a 9.5 out of 10, and says that he could not walk or put pressure on his leg. Id.

The plaintiff reported the incident to security staff and was seen by the HSU. Id. at ¶11. The plaintiff says that "HSU" diagnosed his injury as a high ankle sprain. Id. at ¶12. The HSU gave him a shoe boot, crutches and an ice pack and he received instructions to keep the foot elevated. Id.

About a week later, the plaintiff wrote to "HSU" telling them that he continued to have problems with the left leg and ankle. Id. at ¶13. "Another nursing staff professional" examined the plaintiff. Id. The plaintiff requested additional treatment. Id. He says that "[l]ater, the "Advanced Care Provider" requested that an x-ray be performed by the mobile radiologist unit. Id. at ¶¶13-14.

Sometime in July 2018 the plaintiff was seen by a radiologist at Redgranite. Id. at ¶15. The radiologist looked at the plaintiff's left leg/ankle/foot area and asked him how long ago the plaintiff had sustained the injury. Id. at ¶16. The plaintiff responded that the injury had occurred about a month ago. Id. The radiologist told the plaintiff that an x-ray would not pick up images of the injury and said that the plaintiff needed an MRI. Id. The plaintiff

4

says he was placed on the waitlist for an outside visit to a hospital for the MRI. Id. at ¶16.

The same month—July 2018—the plaintiff was taken to Waupun Memorial Hospital for the MRI and was returned to Redgranite later the same day. Id. at ¶17. The plaintiff says that "[l]ater," he was called to HSU and told that his Achilles tendon in his left leg/foot/ankle area had ruptured and that the injury "involved other ankle issues." Id. at ¶18.

On August 13, 2018, the plaintiff went back to Waupun Memorial Hospital were "the doctor" froze an area of the plaintiff's Achilles tendon and wrapped a cast around the leg. Id. at ¶19. In September 2018 the plaintiff was sent back to Waupun Memorial to remove the cast. Id. at ¶20. The "doctor" removed the case and said that the left leg/foot/ankle area "issues were resolved." Id. at ¶21. The plaintiff informed the doctor that he was still having pain and it didn't feel like the treatment helped. Id. at ¶¶22. The doctor requested physical therapy (PT) at Redgranite. Id. at ¶23. The plaintiff was returned to Redgranite to continue the treatment of the injury. Id. at ¶24.

The plaintiff says that during PT at Redgranite he "repeatedly told the facilitator" that he was still in pain, had limited range of motion and needed more treatment not just physical exercise. Id. at ¶25. The facilitator told the plaintiff that he didn't have access to an MRI machine to know if the initial treatments had healed the Achilles tendon or if "another operation should have taken place." Id. at ¶26.

5

The plaintiff says that from September to December, he was told "by PT" to continue physical movement exercises. Id. at ¶27. The plaintiff says that the "PT facilitator" was aware of his formal and informal complaints of continuous pain and a limited range of motion. Id. at ¶28. The plaintiff alleges that the facilitator disregarded the fact that the plaintiff had told the facilitator and the Advanced Care Provider that the Achilles tendon still felt torn and that the previous treatments hadn't relieve the pain or helped his range of motion. Id.

On March 22, 2019, the plaintiff went to the University of Wisconsin-Madison Hospital for an appointment with a rheumatologist for a previously diagnosed rheumatoid arthritis. Id. at ¶29. The plaintiff says that his ankle injury from June 2018 exacerbated his pre-existing arthritis, causing "an excruciating flare-up." Id. The rheumatologist recommended that "the Achilles tendon and ankle be treated for pain and limited range of motion." Id. at ¶30. The plaintiff was sent out for a second MRI in July 2019. Id.

On August 2, 2019, Nurse Practitioner Burnett "conducted a face to face." Id. at ¶31. The plaintiff asked Burnett to help him understand the July 14, 2019 MRI, particularly the medical finding made by the specialist who had conducted it. Id. at ¶31. Burnett said that the ankle had "infractions" and that the Achilles Tendon was "torn." Id. at ¶32. When the plaintiff asked Burnett what would be done about this, Burnett informed him that "treatment would be coming soon." Id.

On December 7, 2019, the plaintiff was seen at UW-Madison's rheumatology department by Dr. Karen E. Hansen; she asked him what was

causing his rheumatoid arthritis to flare up. Id. at ¶ 33. The plaintiff responded that his left leg and ankle still hurt, so Hansen placed her hand "on the knot physically manipulating the Achilles tendon and confirming the Achilles tendon rupture." Id.

The plaintiff alleges that he has complained "repeatedly, formally and informally, to HSU staff, the PT facilitator and the doctor at Waupun Memorial that the Achilles tendon is still torn, [he's] still in pain and ha[s] limited range of motion." Id. at ¶34. He says that when he has told the facilitator for PT that the physical movement exercises he directs the plaintiff to do cause the plaintiff further pain and possibly more injury, he's told to continue to do the exercises "even without an additional MRI scan." Id. at ¶35. He says he also has complained about lack of sleep due to the pain; he was prescribed Trazodone for the insomnia but he says it did not treat the underlying injury. Id. at ¶36. The plaintiff says, "I continue to be disappointed that I complain of pain and John/Jane Doe nursing staff has never looked at or touch my foot, however offering blood pressure medications." Id. at ¶37. He asserts that the surgery that was performed at the hospital caused him further pain and hasn't treated the original injury. Id. at ¶38. He asks how much longer he has to wait before something meaningful happens. Id. at ¶39.

For relief, he asks the court to order Thompson, Burnett, Rhodes, Nelson and John/Jane Doe nursing staff to immediately arrange for adequate examination and assessment by a qualified physician and immediately arrange for physical therapy or other follow-up treatment. Id. at page 6, Section B. He

also asks for compensatory and punitive damages. Id. at page 6, Sections C and D.

   C.   Analysis

To state an Eighth Amendment claim for deficient medical care, the plaintiff must allege that he had an objectively serious medical condition and that prison officials were deliberately indifferent to that condition. Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Id. (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010); see also Petties v. Carter, 836 F.3d 722, 730–31 (7th Cir. 2016). "Whether a delay is tolerable 'depends on the seriousness of the condition and the ease of providing treatment.'" Cherry v. Eckstein, 751 F. App'x 940 (7th Cir. 2019) (quoting McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)).

The plaintiff alleges that he has severe ankle injuries, including a ruptured Achilles tendon. Those injuries occurred on June 4, 2018, and on August 13, 2018, he underwent a procedure at Waupun Memorial (presumably Nelson was the doctor who performed the procedure). Yet as of October 6, 2020—the date on which he filed the amended complaint—the plaintiff indicates that he continues to suffer. He states that all the defendants—Thompson, the HSU manager; Burnett, the nurse practitioner; Rhodes, the

8

physical therapist coordinator; Nelson, the doctor at Waupun Memorial; and John/Jane Doe nursing staff—were aware of his complaints of pain and complaints that the treatment he has received has not been effective, yet he still has not received proper treatment. The plaintiff further alleges that the delay in treatment and/or lack of proper treatment has exacerbated his pre-existing arthritis and prolonged his extreme pain.

As to Thompson, the plaintiff does not mention her by name in the body of the complaint. Perhaps the plaintiff named her as a defendant simply because she was the manager of the HSU. If so, he has not stated a claim against her, because §1983 "does not authorize 'supervisory liability.'" Vinning-El v. Evans, 657 F.3d 591, 592 (7th Cir. 2011) (citing Iqbal). For a plaintiff to obtain relief against a supervisor, he must show that "the defendant, through his or her own conduct, has violated the Constitution." Brown v. Pfister, No. 18-cv-6042, 2020 WL 6393001, at *6 (N.D. Ill. Nov. 2, 2020) (quoting Perez, 792 F.3d 768, 781 (7th Cir. 2015) and Burks v. Raemisch, 555 F.3d 592, 593 (7th Cir. 2009)). When screening a self-represented plaintiff's complaint, however, the court must construe his claims liberally. The plaintiff has alleged that he repeatedly informed the HSU that he was in pain, and repeatedly informed the HSU that the treatment was not working. The court can infer from these allegations, at the screening stage, that the plaintiff is alleging that Thompson, as manager of the HSU, had reason to know that the plaintiff has been complaining of pain for over a year and that Thompson has not take steps

9

to address those complaints. The court will allow the plaintiff to proceed on a claim against Thompson.

The only allegation the plaintiff makes about Nurse Practitioner Burnett is the allegation that on August 2, 2019, he asked her to help him understand the MRI report; she explained to him that the injury persisted, and when the plaintiff asked what would be done, she responded that treatment would be occurring soon. This is not sufficient to state a claim against Burnett. The plaintiff does not allege that Burnett ignored him—when he asked her for help understanding the MRI she provided it and she told him that treatment would take place soon. The plaintiff has not indicated that he followed up with Burnett or that Burnett was responsible for the fact that future treatments were not successful. The court will not allow the plaintiff to proceed against Burnett.

In September 2018, a doctor at Waupun—presumably Nelson—ordered physical therapy when the plaintiff reported that the procedure had not helped. The plaintiff asserts that he repeatedly told the facilitator of the physical therapy—presumably Rhodes—that the therapy wasn't helping and that it times it was painful and it made things worse. He says that despite these repeated complaints, Rhodes continued to require him to participate in the therapy. On the one hand, this might be considered a disagreement between the plaintiff and a medical provider about the best course of treatment, and "[n]either medical malpractice nor mere disagreement with a [medical professional's] medical judgment is enough to prove deliberate indifference in

10

violation of the Eighth Amendment." Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010) (citations omitted). On the other hand, the plaintiff asserts that he has repeatedly told Rhodes that he is in pain and that the exercises he's being required to do are painful and are making things worse. At the screening stage, the court construes this as an argument that Rhodes has ignored the plaintiff's complaints of pain and will allow the plaintiff to proceed on a deliberate indifference claim against Rhodes.

Nelson appears to be the doctor who performed the procedure at Waupun Memorial Hospital in August 2018. The plaintiff says that Nelson "froze an area of the Achilles tendon then wrapped a cast" around his leg. Dkt. No. 7 at ¶19. The doctor removed the cast in September 2018 and told the plaintiff that his issues were resolved. Id. at ¶¶20-21. When the plaintiff responded that he was still in pain and that the procedure didn't appear to have helped, Nelson prescribed physical therapy. Id. at ¶¶22-23. The plaintiff has not stated a claim against Nelson. Nelson did not ignore the plaintiff's injury. He performed the procedure on the plaintiff's Achilles tendon and, when the plaintiff asserted that the procedure didn't help, prescribed PT. The defendant does not allege that Nelson knew that the PT wasn't working, or even that he saw Nelson again after the September 2018 appointment. The plaintiff says that the surgery Nelson performed did not work. That may be, but as the court already has noted, even malpractice is not enough to state a claim of an Eighth Amendment violation. Berry, 604 F.3d at 441. Nelson treated the

11

plaintiff, and thus the plaintiff has not stated a deliberate indifference claim against Nelson.

Finally, the plaintiff alleges that a John/Jane Doe member of the nursing staff never looked at or touched his foot, just offered him blood pressure medication. This is a very vague claim. A plaintiff cannot allege that everyone on the nursing staff was deliberately indifferent. But it seems as if there may have been one particular member of the staff to whom the plaintiff complained and who ignored his complaints about pain. At this early stage, the court will allow the plaintiff to proceed against the John/Jane Doe member of the nursing staff and he may use discovery to learn that staff member's identity.

In addition to his Eighth Amendment claims, the plaintiff has asserted that the defendants' failure to provide him with a follow-up examination and treatment "constitutes the tort of negligence under the law of Wisconsin." Negligence is a state-law claim, but federal courts may exercise supplemental jurisdiction over state-law claims if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." While the plaintiff has not specifically pled duty and breach, the court will allow the plaintiff to proceed on negligence claims against Thompson, Rhodes and the John/Jane Doe member of the nursing staff.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

12

The court **DISMISSES** Burnett and Nelson as defendants.

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Thompson and Rhodes. Under the informal service agreement, the court **ORDERS** these defendants to file a responsive pleading to the amended complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$308.63** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery

and filing dispositive motions. Once the court has issued a scheduling order, the plaintiff may use discovery—interrogatories (written questions) and requests for documents—to ask the named defendants for information about the identity of the John/Jane Doe nursing staff member. Once the plaintiff learns that person's real name, he may file a motion to substitute the real name for the John/Jane Doe placeholder.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 9th day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**